**STATE OF VERMONT**

**ENVIRONMENTAL COURT**

City of South Burlington,
Plaintiff                 }
                               }
v.                        }     Docket No. 175-8-00 Vtec
                               }
Ernest and Donna Levesque,     }
Defendants

## Decision and Order

In Docket No. 94-5-00 Vtec, Appellant Ernest Levesque, Jr. appealed from a decision of the Development Review Board (DRB) of the City of South Burlington, denying a variance for the construction of a third rental unit and an accessory handicapped residential unit on his property. In Docket No. 175-8-00 Vtec, the City brought an enforcement action against Defendants Ernest and Donna Levesque for the construction of rental units within the main building without zoning approval. The two matters were consolidated, heard, and a decision was issued on October 12, 2001, concluding Docket No. 94-5-00 Vtec and ruling in Docket No. 175-8-00 Vtec on the injunctive relief and penalty sought by the City. Thereafter, the Court granted in part the City's motion for reconsideration in Docket No. 175-8-00, by vacating and deleting only the final two sentences of the first full paragraph on page 4 of the October 12, 2001 Decision and Order, and leaving the remainder of the order in effect, so that the finding of violation and the injunctive relief ordered by the October 12, 2001 Decision and Order remained in effect, but the issue of whether and what monetary penalty should be imposed in Docket No. 175-8-00 Vtec was left open for future hearing.

Appellant-Defendant Ernest Levesque appeared and represented himself; the City of South Burlington is represented by Amanda S.E. Lafferty, Esq. A supplementary evidentiary hearing was held before Merideth Wright, Environmental Judge. The parties were given the opportunity to submit written requests for findings and memoranda of law. Upon consideration of the evidence and the written memoranda and proposed findings, the Court finds and concludes as follows as to the question of monetary penalty. All findings in the October 12, 2001 decision remain in effect and are hereby incorporated by reference. We repeat them here only to the extent helpful to understand this decision.

Defendants own and at the time of the events in this case occupied a two-family dwelling at 195 Hinesburg Road in the R-4 (Residential 4) zoning district of the City of South Burlington. Defendants' property is improved with the house and a detached garage/workshop. The property obtained two zoning permits for renovations and additions in 1982 and 1983, and a zoning permit was issued in 1984 to allow its conversion to a 2-family dwelling, based on a frontage variance also issued in 1984. It met and continues to meet the density requirements for a 2-family dwelling. At the time of the events in this case, Defendants lived in the main portion of the duplex (which consists of the downstairs of the house and an upstairs bedroom), and rented

out the second floor apartment. We will refer to these units as the upstairs duplex apartment and the main duplex apartment. After converting the house to a duplex, Defendants obtained four more zoning permits between 1986 and 1993 for additions to the house and to build the 28' x 28' detached garage and storage area. After those additions had been completed, the main duplex apartment had four outside entrances, six bedrooms (one of which was upstairs), 2 3/4 bathrooms (one having a shower but no bathtub), a ' great room,' a full kitchen, a dining room, and a pantry or galley kitchen with a sink, refrigerator, freezer and laundry facilities, but no stove.

At some time prior to September 27, 1999, Defendants converted[1] the main duplex apartment to add two dwelling units to the first floor of the building[2]. The City described the first of these unapproved dwelling units as the " small dwelling unit" in the southwest corner of the first floor, having a separate entrance from the outside into a single main room furnished as a bedroom/living room but also furnished with a refrigerator; and having a bathroom equipped with shower, toilet and sink. The ' small dwelling unit' had a door leading from its main room into a room of the main duplex apartment. The door was equipped with a lock; the evidence did not reveal whether it was operable only from the small dwelling unit' s side of the door.

The City described the other of these unapproved dwelling units as the " large dwelling unit" in the northwest corner of the first floor, having a separate entrance from the outside into a single main room furnished as a bedroom/living room; having a galley kitchen equipped with refrigerator, microwave (but no stove) and sink; and having a bathroom equipped with bathtub, toilet and sink. The ' large dwelling unit' had a door leading from its main room into a room of the main duplex apartment. The door was equipped with a lock; the evidence did not reveal whether it was operable only from the large dwelling unit' s side of the door.

The connecting room of the main duplex apartment also has a door into the remainder of the main duplex apartment. As of September 30, 1999 two microwaves were located in that room. Defendants argue that the building permits they received between 1986 and 1993 allowed the additions of the downstairs bathrooms and outside doors for the two back bedrooms at issue in this case. While the building permits allowed those <u>physical</u> renovations, those permits did not authorize Defendants to use the renovated space as separate dwelling units. Defendants were entitled to renovate the interior of their house for the use of their own family members, but not to create separate dwelling units (that is, with separate sleeping and kitchen facilities) beyond the two approved for the house as a duplex.

Soon after the September 1999 inspection, Defendants had the small dwelling unit vacated. However, they were involved in a dispute with the tenants of the large dwelling unit that involved those tenants refusing to vacate, withholding rent, and reporting Defendants for health violations. At some time in the spring of 2000, Defendants succeeded in evicting those remaining tenants of the large dwelling unit, at some expense to Defendants.

As of the September 13, 2000 inspection by the City' s Administrative Officer the small and large dwelling units were vacant, but their outside entrances and their interior doors to the main duplex area were still in place. The refrigerator had been removed from the galley kitchen area of the large dwelling unit. The City claims that Defendants were still in violation at this time because the two units were physically capable of being separated from the interior of the main

duplex apartment, and physically capable of being entered from the outside and therefore of being separately used. However, under the City's zoning regulations and the prior permits issued for this property, Defendants were entitled to have the two additional outside entrances. Also, nothing in the City's zoning regulations prohibits a house or a single dwelling unit from having interior doors, although the question of whether those doors are capable of being locked, and whether it is the main house or the separate unit residents who have a key or control the lock, may relate to whether the space in question is 'physically separated' from the rest of the house.

Most importantly, as of the September 2000 inspection, neither the 'small dwelling unit' nor the 'large dwelling unit' fell within the definition of 'dwelling unit' under § 28.116 of the City's Zoning Regulations. That is, to be considered a separate 'dwelling unit,' the unit has to have all of the following characteristics: it must be "physically separated" from other rooms or units in the same structure; and it must contain independent cooking and sleeping and bath facilities; and it must constitute a separate, independent housekeeping establishment for owner occupancy or rental or lease. Even assuming that the interior doorways mean that the units were 'physically separated,' in September of 2000, neither unit had independent cooking facilities (neither had a refrigerator nor a stove), neither unit was an independent housekeeping establishment, and neither unit was either owner-occupied or leased to a tenant.

In November of 2000, a man and his young son were living in the 'large dwelling unit." There is no question that the space was rented or allowed to be used by them for sleeping and bath facilities. But there was no evidence that the unit had independent cooking facilities at that time. At that time, there might have been a violation of the use of the house as a rooming house without a permit(§ 28.146), or of two 'families' using the main duplex dwelling unit only allowed to be occupied by a single family under § 28.114. But there was no continuing violation of the two additional 'dwelling units.'

This Court's order granting injunctive relief (October 12, 2001, as amended by order January 31, 2002) required Defendants to "remove any limitations on internal access within the house to the rooms rented out to lodgers, so that the house consists of two and only two dwelling units." At the City's inspection in February of 2002, the rooms occupied by the 'small dwelling unit' and the 'large dwelling unit' were unoccupied and were used for storage of Defendants' furniture or household items. None of the plumbing or bathroom fixtures had been removed; the doors between the rooms had not been removed but they were not locked.

As of the supplemental hearing on April 26, 2002, Defendants had moved to New Hampshire and had rented out at least the front part of the main duplex apartment, so that the house was being used for only two dwelling units. They may have kept the use of some of the back rooms for storage of their own personal belongings.

The City has expended $204.75 in City employees' salary and $2,607.40 in legal fees and costs in its enforcement efforts in this matter. The City argues that the violations in place in 1999 should be counted as extending to the date of the supplemental hearing on April 26, 2002, because Defendants had not removed the plumbing fixtures or the lockable doors between the 'dwelling units' and the rest of the main duplex apartment. The City also argues that the potential penalty should not be mitigated by any consideration of Defendants' costs of evicting the

recalcitrant tenant, because their motivation for that eviction was his non-payment of rent rather than to cure the zoning violation.

Although the City requested penalties in the full amount of $100/day, for the period from October 4, 1999 to the April 26, 2002 hearing, the court determines that a lesser penalty is warranted in this case, even without considering Defendants' expenses in evicting the recalcitrant lodgers. After receiving the Notice of Violation, Defendants failed to remove limitations on internal access within their dwelling unit and failed for a time to remove the large dwelling unit's cooking facilities and thereby to fully restore the main duplex apartment to its single-dwelling-unit configuration. Defendants were not and are not required to alter any of the outside doors, or to remove any interior doors or plumbing. All they were required to do is to remove the locks on the interior doors (except for rooms used for storage) and remove any refrigerators and cooking facilities from either of the former unpermitted dwelling units. The City expended approximately $2,800 on enforcement of this matter, but some portion of that was spent seeking remedies not warranted by the zoning regulations, such as removal of fixtures or interior doors.

Accordingly, for the 345-day period from October 4, 1999 until the September 13, 2000 inspection when both units were vacant and the refrigerator had been removed, we impose a penalty of $2.50 per day for a total of $862.50. All that was left undone from the November 2000 inspection to the April 26, 2002 hearing was the removal of the barriers to internal access within the main duplex apartment. For that period, the internal doors were capable of being unlocked and may have actually been unlocked; thus the only violation occurred because they were capable of being relocked and therefore of being used as separate dwelling units or rooming units. Accordingly, for the 512-day period from the November 2000 inspection to the April 26, 2002 hearing we impose a penalty of $1 per day for a total of $512. The total penalty imposed in this matter is therefore $1,374.50.

Based on the foregoing, it is hereby ORDERED and ADJUDGED that Defendants shall pay a penalty to the City of South Burlington of $1,374.50 for the zoning violations at issue in this case.

Dated at Barre, Vermont, this 20th day of December, 2002.

_____
Merideth Wright
Environmental Judge

**Footnotes**

[1]    Defendants wish to contest whether their work on the first floor of the house actually constituted the creation of any additional dwelling units. Mr. Levesque testified to having added the outside entrances and other internal alterations to provide his own teenaged children a more

independent living situation as they grew older. However, because Defendants did not appeal the September 27, 1999 notice of appeal, they are precluded from contesting that fact.

[2]    Defendants agreed to the admission of an exhibit showing the configuration at trial, but argued in their post-hearing memoranda that it was not correct. They did not request that the hearing be reopened to take any additional evidence.

[3]    The Court understands that it would make enforcement of the zoning regulations as to the number of allowed units easier if these other features had to be removed, as it would make it more difficult for a homeowner to reconvert to the illegal units after the inspector leaves the premises. However, this is the result mandated by the City's zoning regulations; the City may wish to initiate amendments of its definitions or enforcement provisions for this purpose.

[4]    Without the date of that inspection in evidence, we will use November 30, 2000 to calculate the penalty.